Good morning. I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent David Palumbo. The linchpin of our argument is that Mr. Palumbo did not fire his gun in the course of a drug trafficking crime because by the time he fired his gun, any potential for a drug deal was over. As the court, I think, knows from the briefs, Mr. Palumbo was being driven to a supposed drug buyer by Mr. Schloss and Mr. Hanger. Mr. Hanger was driving. Mr. Schloss was in the front passenger seat. Mr. Palumbo was behind Mr. Schloss in the back seat. They were on rural roads outside of Whitefish, Montana. Mr. Schloss turned around, fired his gun at Mr. Palumbo. He fired a second time. The gun stovepipe, meaning the shell, popped up like that and jammed the gun. Was that gun found later? The gun that was found later was the gun that Mr. Palumbo fired. Did they ever find the other gun? I don't think that's part of the record. At that point, when Mr. Schloss' gun jammed, he lunged through the two front seats into the back seat at Mr. Palumbo. That's when Mr. Palumbo pulled out his gun as they were struggling. He fired five or six rounds until Mr. Schloss was shot through the jaw. Then Mr. Palumbo got out of the car and took off. With the drugs, right? Yes, he took off with the gun that you were referencing and the cocaine. See, what I don't understand is why this stops being in furtherance of a drug crime, because the reason he's firing his gun, you say, well, it's self-defense, but he wants to get out of that car with the drugs and he still wants to sell the drugs. He doesn't want to lose them. To me, and if you litigate in Montana off the reservation cases, you prosecute and defend self-defense cases routinely. Part of the self-defense jury instruction is you can't look back at it sort of armchair quarterbacking with more time to think through what somebody was thinking at the time. You have to put yourself in the position of the person at that time and see how they would have reacted. Here, when somebody's firing a gun at you and you're on some rural road in Montana, Mr. Palumbo's from Washington, and then the person lunges at you, it's illogical to think that Mr. Palumbo's sitting there thinking, I need to protect my cocaine so I can deal with it in the future. Mr. Rhodes, if I could ask you a question on this. This is not like where he's got a substantive charge like murder and he's claiming self-defense. We're not really dealing with the scope of what's a reasonable self-defense. We're dealing with the statutory question of whether when he's got this gun on him and he's heading off to make a drug deal, and one of his criminal colleagues tries to steal it and he uses the gun. Is that a discharge in furtherance of a drug deal? No. It's a statutory question more than like a self-defense question. First, I disagree that it was discharge in furtherance of the drug deal because, again, the drug deal was over. And second, with respect to the fact that this is a statutory sentencing question, absolutely, that is the issue before the court. However, self-defense law certainly can inform the analysis, and again, going to somebody in Mr. Palumbo's situation, to me it's illogical to think that his response is, I've got to protect my cocaine. He's trying to save his life. He was carrying the gun. You don't dispute that he was carrying the gun in furtherance of a drug. He pled guilty to that. At the point when he got in the vehicle, the gun was in his back waistband. But by the time Mr. Schloss fired at him and lunged at him, there was no drug deal, and it's illogical to think that somebody in that circumstance is going to be thinking, I need to save my cocaine. What they're going to be thinking is, I need to save my life. And there's a quote from Currier, which is a First Circuit case. Of course, he was thinking about the cocaine because he left with it. Your Honor, that's all we know, is that we left with it. He left with it. We don't know if the cocaine was also stuck in his pants. We don't know if it was in his December. We don't know if it was in his jacket. We don't know if the cocaine was sitting on his lap. We don't know if the cocaine got pushed to some other part of the vehicle during the struggle, and he actually had to make an affirmative effort to reach across the back seat to grab it, or somehow it got knocked up to the front. We don't know any of that. And that's where there's no facts in the record to support the conclusion that he's firing his gun when his life's being threatened, not to defend himself, but somehow because he's thinking, I need to get that cocaine because I need to deal with it in the future. I started to say there's a quote from our opening brief from Currier. It's a First Circuit case in which basically what happened is a drug dealer's house was, his door was kicked in by a police officer, and the defendant was in what they called a shooter's stance when the police officers knocked on the door, and the government was trying to argue he was in that shooter's stance to protect his drugs, and the district court judge said, quote, In fairness to you, however, let me say that I have a reasonable doubt concerning whether when you snatched that weapon up and pointed it at a police officer, you had any thought at all at that instance about drugs or about drug proceeds. I do not think at that time in that frenetic moment the government had proved beyond a reasonable doubt that one of your purposes was to get the drugs or the drug paraphernalia or the proceeds out of that apartment with you. The most I think this proves is that beyond a reasonable doubt is that you snatched up that weapon to get yourself out of there. That's exactly what happened here. Again, when your life is threatened, it doesn't make sense to think that the reason you're pulling a gun in defense is not of your life but instead of the cocaine, and again, I point to where are the facts to support that conclusion other than the fact, Judge Schroeder, that you acknowledge and that I acknowledge that you stated that he did take off with the cocaine. Mr. Rose, do you want to reserve some time for rebuttal arguments? Yes, Your Honor. Thank you. Good morning. May it please the Court. Bishop Grewell once again on behalf of the government. First of all, in response to Judge Beisler's question, the stovepiped gun was found in PSR paragraph 13. They say that it was found in a ditch later on. That's what I thought, and it was jammed. Yeah, it was in fact stovepiped, and we're not disputing the fact that he That's a fact that I would think that the defendant would want to make clear because it verifies. And we don't dispute on the fact that for the purposes of our briefing here and our argument, we accept that he was even fired upon first. Right. We accept that. We don't think it makes a difference. He admits that he possessed a gun for drug crime. He simply says he didn't discharge him for drug crime. The Dean versus United States case, first of all, makes quite clear there is no intent requirement with regard to the discharge. It only has to occur, the discharge only has to occur during the drug crime. For that reason, all of That's the issue. Was the drug, at what point did this drug crime end and this battle to save your life begin? Certainly, and there are two points on that. First of all, even after he discharges, he still possesses the drugs. Is that a big deal? I mean, he It is because based on those facts, you could find that he still, this court in numerous cases finds that if he possessed the drugs, that's enough to infer the intent to still distribute them. But even if you don't accept that point, he had two predicate crimes here. And the other predicate crime was conspiracy. And there's nothing suggesting that the conspiracy ends simply because he fires that gun. It's not some substantial step away from the conspiracy, the crime of conspiracy. So for that Probably not even significant that his cohorts really got no time in jail. They just kind of went down the road and The gentleman who robbed him? Yes. Those, we didn't end up prosecuting those. Those went through the state system. They have probationary sentences. I'm not sure that One got a probationary sentence and one got a basically what I call suspended imposition sentence. I don't think it's relevant before this court, since it was not in the system. They would be the co-conspirators, though. No, well, not necessarily. I mean, he pled guilty to a conspiracy to distribute the cocaine. I guess I'm not certain that they were necessarily the only conspirators. We don't have to identify them all. And he was going to sell to someone else, presumably. And so that person would have been his conspiracy. I'm just not convinced Dean is exactly on point. Because the gun goes off accidentally at the bank robbery. The bank robbery was continuing forward. Sure. And if the concern is about whether this occurred during the drug crime or not. That's the big point. The district court judge here found that the drug crime still was ongoing. And it's certainly not clear error for him to have made that finding. Because of the fact that he still had the drugs. And we can infer that he still had the intent to distribute them. That when he was fired at, that didn't get rid of his intent to necessarily distribute the drugs at a later. But the Sixth Circuit has a case, doesn't it, that talks about The Gibbs case? Yeah. And in the Gibbs case, the difference there is the gentleman doesn't have a gun on him. He goes and he sells drugs to an officer twice. There's no gun on him. The third time, he goes back. He doesn't have any drugs any longer. He has no drugs to sell at this point. He's not going to go buy drugs from the officer. The drug crime has ended there. There's no drugs left. It wasn't necessarily a conspiracy charge. He then goes back and gets a gun and decides to rob the officer. And so in that case, I believe, also was dealing with the Was he using or carrying it in furtherance of the drug crime? Which does have an intent requirement, as does the possession in furtherance. But that intent requirement was met when he pled guilty here to possession. The fact that there's no intent under Dean for discharge makes Gibbs inapposite here as well. Because there's no intent requirement, the courier cases that he cites, the Tolliver cases, those simply aren't helpful here because all of those dealt with aspects of 924C that had intent requirements, the use and carry and so forth. And so in each of those cases, the self-defense was either used to negate the intent or to justify the intent, or in the Street case, in the Goodface case, the Street being the one in our circuit, to get rid of the intent for the underlying predatory crime, which was a crime of violence. Mr. Gould, if I could ask you a question, please. Certainly. So, okay, intent under some precedent isn't required. But does the precedent on 924C say that in assessing in furtherance of, we should look to the sort of the primary purpose of the guy discharging the gun? Two points on that. The first one being that, as I said, the Dean, which is 924C, says we don't even have to be in furtherance for the discharge. But if this Court felt that we did have to have in furtherance for the discharge, the Potter decision dealt with possession in furtherance of a drug crime where the defendant tried to raise the self-defense point, and the Court said that is irrelevant because even if he was trying to defend himself, that doesn't mean that he wasn't also using the gun in furtherance of a drug crime. And this Court's Stewart decision, which we cite, also suggests that the only reason a drug dealer brings a gun to a drug crime is to protect himself and to protect his stash, and that's clearly in furtherance of the drug crime as well. Protecting himself, even if it's self-defense, is furthering the drug crime. If he was scared that he couldn't protect himself, he might not go out and try and deal these drugs. And so I think all of that precedent suggests that the discharge, even in self-defense, is still in furtherance of the drug crime. I guess the final point, unless the Court has other questions, the Second Amendment arguments simply just hold no water here. Heller and McDonald say it's got to be a lawful purpose. This Court in Potter says that and says when you're using it in furtherance of a drug crime, that's not a lawful purpose. There's simply not a Second Amendment violation at that point. I understand your points completely, but I'm still back on the last point. He would have been better off, obviously, not to have committed the crime or not to have brought a gun, but once he did decide to commit the crime, he did bring a gun, then it was clear someone was shooting at him. It would have been better off just to be shot, or at least he would have been facing a lesser sentence. For that purpose, but the Dean case says, you know, that's the risk you take when you decide to do a drug crime and you decide to bring a gun. The alternative rule is that you're going to say, well, okay, he possesses it, he doesn't have a defense, but when he fires it, we're going to encourage him to fire it, and now he's got a defense. It just doesn't seem a very logical rule to adopt. Interesting intellectual. Certainly. I appreciate the Court's questions. Unless there are any further, I'll cede the remainder of my time. Thank you. Thank you. Okay, Mr. Brooks. Thank you, Your Honor. First, I apologize for my mistake about the gun that was found. It's an important point, I thought. And Mr. Palumbo's gun was recovered in Washington, so both guns were recovered. To clarify a fact, both of the other passengers in the car, Schloss and Hanger, did get, in essence, probationary sentences. Mr. Palumbo did not plead guilty to conspiracy. He pled guilty to the in furtherance crime on that date, December 5th of 2009. So the conspiracy analysis is completely irrelevant. Dean spoke of, in the course of, a drug trafficking crime. And here, again, when Mr. Palumbo fired his gun, the drug trafficking crime was over. Could you elaborate on that, please, Mr. Rhodes? Why do you say the drug trafficking crime was over? First, as I said already, Your Honor, when somebody's trying to kill you, shoot at you from within a few feet, you're not thinking about your possessions. You're thinking about your life. True, he might not have been thinking about the drug crime when he reacts to defend himself. But why is it that the drug crime is over? Because at that point, there's not going to be a drug deal when somebody's trying to shoot somebody, kill them, from within two or three feet. That simply ended any drug transaction. Well, because the drug crime is over, isn't the language of a drug crime? In the course of is the language from a, and I would add here, a drug trafficking crime. So it was still in the course of a drug trafficking crime. It wasn't what he thought the drug trafficking crime that he got into the car thinking he was going to commit. I disagree, Your Honor. The drug trafficking had ended when someone's trying to kill you, and the district court concluded that was not the case but offered no facts to support that other than conclusory reasons. There was no explanation, no explication. Gibbs is on point, although in Gibbs, the drug trafficking was separated from the robbery. Here, they happened to happen sequentially. They attempted drug trafficking that concluded once the robbery began, but Gibbs provides an analytical framework to separate the two. Potter is distinct in that Potter, the gun was found in the person's house in the midst of the possession with intent to distribute drug crime. So Potter is not like the case here where the drug trafficking ended, and we don't know what happened to that cocaine. Mr. Colombo may have thrown it away. He was in the middle of nowhere outside of Whitefish, Montana. He may have used it himself. We simply don't know what happened to it, and that goes to the fact there's been no factual explanation to support the conclusion. Mr. Groza, I don't mean to interrupt you, but your time is up. I did, I gave you a couple extra minutes, so if you could bring your argument to a close, we'd appreciate it. As I began the argument, Your Honor, the crux of our argument is that when Mr. Kwas pulled the gun and fired at Mr. Colombo, the drug trafficking had ended. Mr. Colombo's subsequent discharge of his firearm was not in the course of, to use the language of Dean, drug trafficking, and therefore he should not get the extra five years under 924C, and that's also the basis for our Second Amendment argument. Great, okay, thank you. Thank you, Your Honor. The case shall be submitted. Again, I thank both of you for your excellent arguments. Now, the Colombo case shall be submitted.
judges: Beistline, Schroeder, Gould